**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **TIMOTHY F.,**[1] | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 7:22-CV-174** |
| | ) | |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Timothy F. ("Timothy") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. § 1381–1383f. Timothy alleges that the Administrative Law Judge ("ALJ") erred by failing to properly consider the medical opinions in the record, by failing to perform a function-by-function analysis, and by improperly discounting his subjective complaints. I conclude that substantial evidence does not support the Commissioner's decision. Accordingly, I **GRANT in part** Timothy's Motion for Summary Judgment (Dkt. 12), **DENY** the Commissioner's Motion for Summary Judgment (Dkt. 15), and **REMAND** this case for further administrative proceedings consistent with this opinion.

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Timothy is not disabled under the Act.  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).  "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate

2

here because the ALJ's opinion improperly relies upon objective evidence and fails to consider

Timothy's complaints of pain and the medical opinions in the record.

## CLAIM HISTORY

Timothy filed for SSI and DIB on July 3, 2018, alleging disability beginning November

18, 2003. Timothy's date last insured was March 31, 2006; thus, he must show that his disability

began on or before this date and existed for twelve continuous months to receive DIB. R. 16. 42

U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Timothy's

claims were denied by the Commissioner at the initial and reconsideration level of administrative

review. R. 81–100.

ALJ Joseph Scruton held administrative hearings to consider Timothy's claims on April

15, 2020 and May 12, 2021. R. 35–80. Counsel represented Timothy at the hearing, which

included testimony from vocational expert Barry Hensley, Ph.D. Id. On June 18, 2021, the ALJ

entered a decision analyzing Timothy's claims under the familiar five-step process[2] and denying

his request for benefits. R. 15–28.

The ALJ determined that Timothy was insured from the alleged date of disability of

November 18, 2003 through March 31, 2006, and that he suffered from the severe impairments

of degenerative joint disease of the bilateral shoulders (including right shoulder impingement

syndrome and rotator cuff tear followed by surgical repair), lumbar spine herniated disc and

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

degenerative disc disease. R. 18.  The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 20–21.  The ALJ concluded that Timothy retained the residual functional capacity ("RFC") to perform a range of light work, except that he can occasionally reach overhead with the bilateral upper extremities; and frequently, but not constantly, reach in other directions with the bilateral upper extremities. R. 21.

The ALJ determined that Timothy could not perform his past relevant work as an EMT, nurse assistant, line maintenance worker, janitor and fire equipment installer, but that he could perform jobs that exist in significant numbers in the national economy, such as mail clerk, office helper and hand packer. R. 27–28.  Thus, the ALJ concluded that Timothy was not disabled. Id. Timothy appealed the ALJ's decision and on February 14, 2022, the Appeals Council denied his request for review. R. 1–5.  This appeal followed.

**ANALYSIS**

I.    **Medical History**

Timothy's appeal involves a limited relevant period from November 18, 2003 through March 31, 2006. R. 17–18.  Timothy was injured in September 2003 when he was struck by a backhoe and compressed into a wall, injuring his shoulders and lower back. R. 638–40.  Timothy underwent a right shoulder arthroscopic debridement and open rotator cuff repair on November 18, 2003. R. 669.

The operating surgeon, Raymond Monto, M.D., authored letters "to whom it may concern" in December 2003, January and February 2004, indicating that Timothy's bilateral shoulder injuries were the result of his occupational accident, that Timothy continued to

4

experience ongoing shoulder and low back pain, and was not ready to return to work. R. 662, 663, 671.

In February 2004, an MRI of Timothy's lumbar spine showed degenerative disc disease at L5-S1 and diffuse marrow abnormality that required further evaluation. R. 674–75.  Timothy saw Janet Limke, M.D., for his low back pain. On examination he had a normal non-antalgic gait, was able to toe, heel and tandem walk without any difficulties and had full range of motion in his bilateral hips and knees. Timothy had significant pain in the low back during all of those motions. R. 686.  Dr. Limke recommended aggressive spine physical therapy, and cleared Timothy for sedentary work capacity. R. 687.

On March 10, 2004, orthopedic surgeon Marc Linson, M.D., indicated by letter that Timothy damaged his L5-S1 disc as a result of the occupational injury in September 2003 and that "while it is too soon to consider him at a medical end result, at the present time he is not able to resume any reasonable gainful employment, and specifically, not his former job…" R. 676.

On March 11, 2004, Robert Leffert, M.D., reviewed Timothy's medical records, performed an examination, and determined that his medical treatment was necessitated by his work accident and has been appropriate. He determined that Timothy was presently totally disabled for all gainful employment, and his prognosis to return to his prior occupation was guarded. R. 677–79.

On May 26, 2004, Jonathan Gastel, M.D., completed an independent medical examination of Timothy. R. 680. Dr. Gastel reviewed Timothy's treatment for his shoulder pain after the September 2003 work accident. On examination, Timothy had mild atrophy around the right shoulder girdle, and complaints of pain at the extremes of his range of motion. R. 682. Dr. Gastel questioned Timothy's effort while doing external rotation strength testing. Dr. Gastel

noted that Timothy continued to have pain in the right shoulder although he had normal motion. Dr. Gastel believed Timothy's right shoulder symptoms were related to his right rotator cuff. Timothy's left shoulder pain was mild and consistent with mild impingement syndrome. Dr. Gastel did not assess a "significant physical disability," but found it reasonable to limit Timothy's overhead activities. R. 683.  He recommended continuing rotator cuff rehabilitation exercises.

Timothy visited Daniel McBride, M.D., for bilateral shoulder pain in August 2004. R. 694. Timothy reported that his right shoulder was not doing well post-surgery and physical therapy, and his left shoulder was notably better, although it still hurt.  Dr. McBride was concerned that Timothy's right shoulder rotator cuff repair had failed. Dr. McBride also assessed a left shoulder rotator cuff tendinopathy without a tear, and the possibility that either shoulder could have a subtle labral tear. R. 695.

Timothy continued with physical therapy, and was reevaluated for right shoulder symptoms on November 1, 2004. R. 696.  Timothy reported pain radiating down to his forearm and hand, shoulder stiffness in the morning and burning achy pain in the subacrominal space. His active range of motion and strengths were "quite good." Dr. McBride diagnosed a possible re-tear of the right rotator cuff and Timothy elected to proceed with surgery. Id.

On December 8, 2004, Timothy had an orthopedic consult and reported pain in his back and shoulders. R. 442.  On examination, Timothy had tenderness in the lateral side of the left shoulder and "uncomforting" abduction. He had limited lateral rotation and short abduction in his right shoulder.  Timothy had tenderness and limited range of motion in his thoracolumbar region.  Muhammed Awaisi, M.D., recommended further evaluation of the shoulder, nonsteroidal medication and exercises at home. Id.

Timothy underwent a second right rotator cuff arthroscopy, labral repair and rotator cuff repair on March 15, 2005. R. 706.  Dr. McBride wrote a note on April 21, 2005, indicating that Timothy would be out of work for four months. R. 724.  In May 2005, Dr. McBride noted that Timothy was doing "fair," still had pain similar to pre-operation, and his shoulder moved well with modest impingement sign. R. 725. Dr. McBride recommended that Timothy continue with rehabilitation efforts, and refrain from any sort of heavy lifting, pushing, pulling or any traction on the arm.  Dr. McBride recommended that Timothy not consider left shoulder surgery until, and if, he gets a decent result out of his right shoulder surgery. Id.

On June 16, 2005, Bruce Lockhart, M.D., completed a disability retirement application for Timothy, and indicated that he was mentally or physically incapable of performing the essential duties of his job; his incapacity was likely to be permanent; and it might be the natural and proximate result of the claimed personal injury he suffered in the performance of his work duties. R. 769.

On June 25, 2005, Dr. McBride completed a disability retirement application form, and indicated that Timothy was mentally or physically incapable of performing the essential duties of his job, but that the incapacity was not likely to be permanent. R. 707. Two weeks later, Dr. McBride filled out the same form, but this time indicated that Timothy's incapacity was likely to be permanent for his job as a water craftsman as the duties were outlined to him. R. 771.

In August 2005, Timothy followed up with Dr. McBride and was doing fair but had no decrease in pain compared to pre-operation. R. 730.  He noted pain with overhead use and when lifting things out in front of him.  He also noted mild symptoms on his left shoulder. Timothy had good active range of motion of both shoulders, positive impingement sign, positive rotator cuff tension signs, possible pain with the O'Brien's maneuver, and his greater tuberosity and

7

bicipital grove area were somewhat tender.  Dr. McBride assessed mild left shoulder rotator cuff tendinitis; persistent right shoulder pain despite having a rotator cuff repair and a slap labral repair. Dr. McBride did not believe another surgery would be helpful, and suggested a second opinion with Sumner Karas, M.D.  Id.

Timothy was evaluated by John Corsetti, M.D. for a second opinion regarding his right shoulder in November 2005. R. 812.  On examination, Timothy's right shoulder had full motion but was painful; moderate weakness; no laxity; no SLAP findings; and his AC joint was quite tender.  His left shoulder had full range of motion, full strength and no evidence of instability. Dr. Corsetti assessed a rotator cuff deficiency, and noted that Timothy's MRI showed a high-grade thinning of the tendon. Dr. Corsetti recommended a revision rotator cuff repair based on insufficient cuff attachment. R. 814.

In December 2005, Timothy continued to note ongoing pain radiating into his fingers, and numbness and tingling into the arm. Dr. Corsetti scheduled a right shoulder arthroscopy with possible revision cuff repair, biceps tenodesis, and labral repair if necessary. R. 815.

In January 2006, MacEllis Glass, M.D., examined Timothy regarding the injuries he sustained in his work-related accident in September 2003. R. 806.  Dr. Glass determined that Timothy's current physical capacity places him in the "Light to Selected category, precluding only repetitive heavy lifting and overhead work." R. 810. Dr. Glass determined that Timothy's prognosis was fair, and it was more likely than not that at the conclusion of treatment he will be able to perform with moderate exertion activities that do not involve elevating the arms up to or above shoulder level. R. 811.

Timothy underwent a third surgery on his right shoulder in February 2006.  He visited Dr. Corsetti approximately four and a half weeks post-surgery and was doing well.  R. 834.  By

March 29, 2006, Timothy's right shoulder was "acting up," and he had full motion, good

strength, no laxity and mild residual irritability. R. 835.  In May 2006, Timothy's right shoulder

was still bothering him, and Dr. Corsetti determined that he was doing "quite poorly," and that

he may have to live with the problem indefinitely. R. 836.

On September 12, 2006, Dr. Corsetti wrote a letter indicating that Timothy continues to

complain of pain and disability in his right shoulder despite multiple operations. R. 838. He is

diagnosed with chronic rotator cuff tendonitis/tendinopathy of his right shoulder and developed a

compensatory left shoulder rotator cuff tendonitis. He determined that Timothy is partially

disabled, and could potentially work in occupations requiring no repetitive use of either upper

extremity, minimal use above the horizontal, no lifting over 5 pounds frequently, and no lifting

over 15 pounds occasionally. Dr. Corsetti noted it was unlikely that Timothy would ever be

completely pain free and totally functional. R. 839.

On October 16, 2018 and January 30, 2019, respectively, state agency medical

consultants reviewed Timothy's medical records and determined that the evidence was

insufficient to make an RFC determination. R. 83–84.

## II.    ALJ Decision

The ALJ set forth Timothy's treatment history in summary fashion in his decision. R. 22–

25.  The ALJ noted that Timothy received "various forms of treatment, including surgeries for

the right shoulder," and determined that the treatment "has been generally successful." R. 25.

The ALJ acknowledged that Timothy re-tore his rotator cuff after the first surgery, but that

imaging did not show any serious abnormalities after his second surgery. The ALJ also noted

that Timothy's doctors noted a "technically successful repair despite his complaints of pain." Id.

The ALJ determined that the objective medical evidence showed mild abnormalities, and that

Timothy's ability to perform normal tandem walking, heel walking and toe walking support the finding that he can perform light exertional work.  The ALJ also noted that Timothy's physical examinations "did not reveal great objective limitations in the right shoulder" and that "he often had normal or nearly normal range of motion," and thus, was capable of occasional overhead reaching and frequent reaching in other directions. Id.

The ALJ considered only a few of the medical opinions in the record.  Specifically, the ALJ noted but did not consider Dr. Linson's March 2004 opinion that Timothy was not able to resume gainful employment because it was not "a long-term or permanent opinion of specific functional abilities and limitations." R. 23.

The ALJ noted but did not consider Dr. Leffert's March 2004 opinion that Timothy was totally disabled from all gainful employment and had a guarded prognosis for return to heavy work, finding that such "[c]onclusory statements" not considered medical opinions under the regulations. Id.

The ALJ noted but did not consider Dr. Gastil's May 2004 opinion that Timothy could work with limited overhead activities, because it was "intended only as temporary restrictions." R. 23.

The ALJ considered the state disability pension forms completed by Drs. McBride and Lockhart, but noted that they did not qualify as medical opinions under the regulations. R. 24.

The ALJ found unpersuasive Dr. Corsetti's September 2006 letter finding Timothy partially disabled, and that he could perform work with no repetitive use of either upper extremity, minimal use above horizontal, and no lifting over 5 pounds frequently or 15 pounds occasionally.  The ALJ determined that Dr. Corsetti's opinion was "mostly supported" by Timothy's subjective complaints of pain; Dr. Corsetti "admitted" that Timothy seemed to be

objectively healed, and Timothy had mostly normal range of motion and only mildly decreased strength. R. 26.  The ALJ disagreed with Dr. Corsetti's opinion that Timothy should not have repetitive use of either upper extremity, finding no evidence that Timothy had significant problems with his elbows and hands. Id.

The ALJ considered Dr. Glass's January 2006 opinion that Timothy could perform light work with no repetitive heavy lifting or overhead work, and noted that the term "light" work is not considered an opinion under the regulations, but that Dr. Glass's finding that Timothy cannot perform repetitive heavy lifting is persuasive. R. 26.

The ALJ also considered a 2009 physician's assistant assessment that Timothy would always have restriction in both shoulders, with more restriction on the right, and he cannot perform frequent lifting of more than 5 pounds.  The ALJ found the opinion unpersuasive because it was given approximately three years after Timothy's date last insured, and did not reflect his capacity during the relevant period. R. 26.

The ALJ determined that Timothy could perform light work with occasional reaching overhead with both upper extremities, and frequently, but not constantly, reaching in other directions with both upper extremities. R. 21.

###    III.    <u>Physician Opinions and Subjective Complaints</u>

Timothy asserts that the ALJ's decision fails to specifically address eight of the twelve medical opinions in the record, improperly discounts the opinions he did discuss in his decision, and is not supported by substantial evidence. I agree that substantial evidence does not support the reasoning provided by the ALJ to discount Timothy's alleged pain and symptoms, along with most of the medical opinions in the record. Specifically, I find that the ALJ improperly relied upon the objective findings relating to Timothy's right shoulder, while disregarding the

consistent evidence of pain and resulting limitations in that shoulder. The ALJ's failure to consider and account for Timothy's ongoing right shoulder pain, which is well-documented in the record during the relevant period, also undermines the ALJ's conclusion that almost all of the medical opinions in the record are unpersuasive.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added). "At this step, objective evidence is *not* required to find the claimant disabled." Arakas v. Comm'r., 983 F.3d 83, 95 (4th Cir. 2020) (citing SSR 16-3p, 2016 WL 1119029, at *4–5). SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

Here, the ALJ's analysis of the medical records and the physician opinions relies entirely upon normal objective findings regarding Timothy's right shoulder and disregards Timothy's documented complaints of right shoulder pain. When discussing Timothy's right shoulder limitations, the ALJ stated:

> The claimant did have some abnormalities associated with the right shoulder. As explained above, he underwent surgeries, but objective imaging appeared to show that they were technically successful. Furthermore, physical examination did not reveal great objective limitations in the right shoulder. He often had normal or nearly normal range of motion in the right shoulder during the period at issue, so the undersigned finds he can perform occasional overhead reaching and frequent reaching in other directions. He sometimes had full strength and other times his strength was described as mildly reduced or 4/5. This would be accommodated by his limitation to light work.

R. 25.

The ALJ correctly notes that Timothy's records generally reflect normal range of motion and mildly reduced strength in his right shoulder. However, they also reflect that Timothy experienced pain in his right shoulder while performing activities using normal range of motion and strength. Timothy's right shoulder pain is well documented in the record; it was noted by his treating physicians during his right shoulder examinations (R. 442, 682, 694, 696, 730, 809, 812); and was eventually deemed by Dr. Corsetti to be ongoing and beyond surgical repair (R. 839). Indeed, Timothy experienced pain in his right shoulder such that he underwent *three* different shoulder surgeries in a two-and-a-half-year period, in an attempt to alleviate the pain. However, the ALJ does not discuss, nor does he account for the documented pain Timothy experienced in his right shoulder, despite his "normal" objective findings.

The ALJ also stated multiple times in the opinion that Timothy's right shoulder treatment was successful and that his doctors noted a "technically successful repair." R. 25. Again, these findings disregard Timothy's continued complaints of global right shoulder pain after his third

right shoulder surgery in 2006 (R. 837), and Dr. Corsetti's statement thereafter that Timothy "has undergone multiple operations on his right shoulder including rotator cuff repair and biceps tendonesis, but unfortunately continues to complain of pain and disability." R. 838.  Dr. Corsetti noted that Timothy's right shoulder is a "very difficult and very unusual situation[] in which patients have arthroscopically documented rotator cuff healing, yet continue to experience pain." Dr. Corsetti found that even if Timothy underwent an additional right shoulder surgery, it is unlikely that he will be completely pain free and totally functional. R. 839. He concluded that Timothy could potentially work in occupations requiring no repetitive use of either upper extremity, minimal use above the horizontal, no lifting over 5 pounds frequently, or 15 pounds occasionally. R. 838.

Dr. Corsetti, along with many of Timothy's treating physicians, found that Timothy experienced right shoulder pain that limited his ability to perform certain work activities, despite his normal right shoulder range of motion and strength on examination.  See 662, 663, 671, 676, 677–79, 683, 687, 769, 771, 810, 811, 838.  However, the ALJ either did not consider, or did not find persuasive, any of the numerous medical opinions in the record. The ALJ disregarded most of the medical opinions on the basis that they were either conclusory, or not long-term or permanent opinions of Timothy's specific functional abilities.

The ALJ did consider the opinions of Dr. Corsetti and Dr. Glass, but found them unpersuasive.  Notably, the ALJ's analysis of Dr. Glass's opinion did not discuss the supportability or consistency of his opinion, as required by 20 C.F.R. § 404.1520c.[3] See Dowling v. Comm'r, 986 F.3d 377 (4th Cir. 2021) ("While an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must

---

[3] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017.

14

nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion.") The ALJ determined that only one finding from a medical doctor was persuasive—Dr. Glass's conclusion that Timothy cannot perform repetitive heavy lifting. R. 26. The ALJ agreed with this particular limitation, but provided no explanation other than, "the [ALJ] has limited him to light exertional work." R. 26.

The ALJ briefly discussed the consistency and supportability of Dr. Corsetti's opinion, and found it unpersuasive. As noted above, the ALJ's reasons to discount Dr. Corsetti's opinion of Timothy's functional limitations are not supported by the record. Dr. Corsetti examined and treated Timothy multiple times prior to providing his opinion, performed surgery on Timothy's right shoulder and eventually determined that Timothy's right shoulder pain was beyond surgical repair.  The ALJ's conclusion that Timothy is "objectively healed" (R. 26), is contradicted by Dr. Corsetti's treatment notes and statements set forth above, as well as Timothy's ongoing treatment for right shoulder pain and his continued consistent complaints of right shoulder pain despite undergoing three shoulder surgeries.  The ALJ's statement that there is no evidence of significant problems with Timothy's elbow and hands is also contradicted by multiple records referencing pain radiating from Timothy's shoulder into his elbows and hands, with tingling and numbness. See R. 696, 812, 815.

Thus, the ALJ did not provide sufficient reasoning (or any reasoning) to discount Dr. Glass's consultative opinion regarding Timothy's functional limitations.  The ALJ provided reasons to find Dr. Corsetti's treating opinion unpersuasive, but those reasons are not supported by the record.

Overall, the ALJ's analysis of Dr. Corsetti's opinion, and of Timothy's functional capacity, improperly relies upon Timothy's objective findings while ignoring his consistent,

documented issues with pain. The ALJ's decision repeatedly notes that Timothy had normal range of motion in his right shoulder and mildly decreased strength, but fails to recognize that Timothy experienced right shoulder pain when performing activities using normal range of motion and strength. While pain is a subjective measure, it cannot be discounted simply because it does not show up on an X-ray or inhibit movement.  Timothy's "subjective evidence of pain intensity cannot be discounted solely based on objective medical findings." Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017); see Shelley C. v. Comm'r., 61 F.4th 341, 360 (4th Cir. 2023) (ALJ erred by discounting a claimant's subjective complaints as inconsistent with the record's medical evidence); Arakas, 983 F.3d at 96 (the ALJ applied an incorrect legal standard by discrediting claimant's complaints based on the lack of objective evidence corroborating them).

I recognize that it is not my function to conduct a blank slate review of the evidence by reweighing conflicting evidence, determining credibility, or substituting my judgment for the ALJ's when "reasonable minds could differ." See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). In fact, I am precluded from doing so; it is the duty of the ALJ to explain the basis for his opinion. However, the ALJ did not adequately explain his analysis and identify the evidence supporting his RFC assessment such that this Court can determine whether his decision is supported by substantial evidence.

## **<u>CONCLUSION</u>**

For these reasons set forth above, I **GRANT in part** Timothy's motion for summary judgment, **DENY** the Commissioner's motion for summary judgment this case, and **REMAND**

16

this matter to the Commissioner for additional consideration under sentence four of 42 U.S.C.

§ 405(g).

Entered: September 5, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge